**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 22-cv-3222-WJM-MDB

SUZANNE MYERS,

      Plaintiff,

v.

AMERICAN MODERN PROPERTY AND CASUALTY INSURANCE COMPANY,

      Defendant/Third-Party Plaintiff

v.

JENNIFER H. WILLIAMS, individual; and
EMPOWER REALTY TEAM, LLC, a Colorado Corporation

      Third-Party Defendants

---

### ORDER GRANTING DEFENDANT/THIRD-PARTY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

---

Before the Court is Defendant/Third-Party Plaintiff American Modern Property and Casualty Insurance Company's ("American") Motion for Default Judgment ("Motion") against Third-Party Defendants Jennifer H. Williams and Empower Realty Team, LLC (jointly, "Williams"). (ECF Nos. 61, 63.) For the following reasons, the Court GRANTS the Motion.

## I. BACKGROUND

### A.    Allegations in the Third-Party Complaint[1]

The Court takes the following facts from American's Third-Party Complaint (ECF No. 33) which, as a result of Williams's default, are deemed admitted.

Myers owned a house in Colorado Springs, which she used as a rental property. (*Id.* at 10.)  In the Fall of 2019, the house was occupied by a tenant who, at some point, stopped paying rent.  (*Id.*)  In September 2019, Williams, Myers' property manager, sued the tenant in El Paso County Court for failure to pay rent.  (*Id.*)  The County Court ordered the tenant to vacate the house by October 22, 2019, or else the Court would enter a judgment for possession in Williams's favor.  (*Id.* at 11.)  On October 12, 2019, Williams falsely told Myers that the tenant had been evicted and that the County Court case had been closed.  (*Id.*)  Williams learned soon thereafter that the tenant had not vacated the property by October 22, so she filed a motion for possession.  (*Id.*)  The County Court granted the motion and told Williams that she may "immediately request a Writ of Restitution."  (*Id.* at 12.)  But Williams did not request the writ; instead, she told Myers that the tenant still had keys to the house, and that, between October 22–24, "a sheriff had forcibly removed" the tenant from the house; a locksmith would change the locks to the house; and she would personally inspect the property thereafter.  (*Id.*)  None of these events took place on those dates.  (*Id.*)

---

[1] American asserts its third-party claims against Williams in what it labels its Amended Answer (ECF No. 33) to Myer's Complaint.  For clarity, the Court refers to this document as the "Third-Party Complaint."

On October 31, Williams inspected the property and did not notice anything unusual.  (*Id.* at 13.)  A few days later, the tenant returned to the house and spray-painted expletive language on the walls, defecated on the floors, left meat to rot in the basement, littered, stole large appliances, and left two cats in a bedroom to eventually die.  (*Id.*)  Williams notified Myers of the vandalism on November 2.  (*Id.*)

At all relevant times to this case, American insured the house.  (*Id.* at 14.)  In November 2019, Myers filed a claim for repairs with American.  (*Id.*)  After inspecting the house and conducting an investigation, American rejected Myers' claim, explaining that its insurance policy does not cover losses caused by the criminal activity of a tenant.  (*Id.* at 14–15.)  According to American, its investigation and the information Myers provided indicated that the tenant vandalized the house before she was evicted—that is, while she was still a tenant.  (*Id.*)  Myers asked Williams to provide American with further documentation about the claim, but Williams did not do so.  (*Id.* at 16.)

In July 2021, Myers sold the house.  (ECF No. 4 at 5.)  That same month, she hired a public adjuster and claims professional to assist in the investigation of the claim.  (*Id.* at 5.)  Over the course of the next few years, American paid Myers a total of $145,472.28 pursuant to the insurance policy.  (ECF No. 33 at 6.)

## B.    Procedural History

In December 2022, Myers sued American, alleging breach of contract, bad faith breach of an insurance contract, and a violation of section 10-3-1115.  (ECF No. 4 at 6, 7, 10.)  In short, she claimed that American "unreasonably delay[ed] and resist[ed]

3

making payments for covered benefits," which forced her to sell her house at a

depreciated value and deprived her of other benefits, like rental income.  (*Id.* at 6–7.)

In March 2023, American filed a Third-Party Complaint, wherein it asserted, as

relevant here, third-party claims of equitable subrogation and equitable contribution

against Williams.  (*Id.* at 9.)  Specifically, American alleged that Williams

> is responsible, at least in part, for the vandalism at the
> Property because she failed to obtain a Writ of Restitution
> against the Tenant, failed to evict the Tenant, failed to
> secure the Property once the Tenant vacated the Property,
> failed to obtain the keys to the Property from the Tenant,
> failed to the change the locks of the Property once the
> Tenant vacated the Property, permitted the Tenant to reenter
> the Property, and provided false and misleading information
> to American Modern with respect to the alleged 'eviction' and
> the vandalism."

(*Id.* at 17.)  In American's view, it "is entitled to payment from Ms. Williams for all

amounts that American Modern has paid, and may be obligated to pay in the future, to

[Myers] with respect to the Claim."  (*Id.*)  That same month, the Clerk of Court issued a

summons as to Williams.  (ECF No. 36.)

In June 2023, American filed an unopposed motion to amend the scheduling

order on the ground that it had been unable to effect service on Williams.  (ECF No. 37

at 3.)  American attached several exhibits indicating the various ways it tried to serve

Williams "on at least 7 occasions."  (*Id.* at 6.)  Soon thereafter, American moved for

substitute service, which United States Magistrate Judge Maritza Dominguez Braswell

granted.  (ECF No. 42.)  Specifically, Judge Dominguez Braswell found "that Ms.

Williams may be evading service and additional efforts to obtain personal service would

likely be to no avail."  (*Id.*)  In August 2023, American notified the Court that it had

complied with the substitute process but had still been unable to serve Williams.  (ECF

4

No. 44.) After Judge Dominguez Braswell found that Williams had "been effectively served with the Third-Party Complaint and Summons," American moved for—and the Clerk of Court entered—default against Williams. (ECF Nos. 46, 48, 49.)

In November 2023, American paid Myers $63,000 to settle their lawsuit, and these parties "agree[d] to a dismissal with prejudice of the claims between" them. (ECF No. 59) Pursuant to this agreement, Judge Dominguez Braswell dismissed Myer's claims against American with prejudice, leaving American's claims against Williams intact. (ECF No. 60.) In January 2024, American moved for default judgment against Willaims, seeking "damages totaling $63,000 as a result of the settlement between American Modern and [Myers]." (ECF No. 61 at 6–7.)

In May 2024, Williams, acting pro se, entered an appearance in this case, responding to American's motion for default judgment and asking the Court to dismiss the Motion, along with "the action against [her]," due to improper service. (ECF no. 65 at 1.) Williams says that neither she nor Empower Realty Team, LLC, "were properly served with the complaint and summons in this case" because she has "been living out of state in Arizona for over two years, and Empower Realty Team, LLC, has been non-operational for the same period." (*Id.*) According to Williams, she "only became aware of this lawsuit through an email [she] received on May 20, 2024." (*Id.* at 2.) American filed a reply to Williams's response. (ECF No. 71.)

## II. APPLICABLE LAW

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Pursuant to Rule 55(b)(1), default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the

5

party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  "[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

But "a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court."  *Greenwich Ins. Co. v. Daniel Law Firm*, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (internal quotation marks omitted).  Before granting a motion for default judgment, the Court must take several steps.  First, the Court must ensure that it has personal jurisdiction over the defaulting defendant and subject matter jurisdiction over the action.  *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986).  Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant.  *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.").  "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true."  *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

### III. ANALYSIS

#### A.  Williams's Argument[2]

As a preliminary matter, the Court briefly addresses Williams's request that it dismiss American's Motion and the action "due to improper process."  (ECF No. 65 at 1.)  Contrary to Williams's argument, American properly effected service.  Although Williams says that she had no knowledge of this lawsuit until May 2024, the Court finds that assertion hard to believe.  As American points out, it complied with Judge Dominguez Braswell's Order allowing for substitute service, and it has attached several exhibits (*See, e.g.*, ECF No. 71) demonstrating its extensive efforts to effect service on Williams.  (ECF Nos. at 42, 48.)  Notably, in her single filing in this case—submitted over a year after American filed its Third-Party Complaint—Williams presents no credible evidence substantiating her claim that she has been living in Arizona for the past two years and unaware of this case.  (ECF No. 65 at 1.)  The evidence presented by American, by contrast, appears to show that Williams has been living in Colorado from August 2017 through the present, according to a filing she submitted to an El Paso County Court in September 2023.  (ECF No. 71 at 21.)  Thus, the premise of Williams's contention is flawed, and the Court therefore rejects her request to deny American's Motion and the action.

---

[2] The Court notes that Williams does not ask the Court to set aside the Clerk of Court's entry of default.

**B.      Jurisdiction**

The Court finds that it has subject matter jurisdiction over this case.  District courts have subject matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).  American is a corporation organized and existing under the laws of Ohio.  (ECF No. 61 at 4.)  Williams is a citizen of Colorado, and Empower Realty Team, LLC, which Williams solely owned, is a citizen of Colorado for jurisdictional purposes.  (*Id.* at 4–5.)  Ordinarily, the amount in controversy is established by the allegations set forth in the complaint.  *Wiatt v. State Farm Ins. Companies*, 560 F.Supp.2d. 1068, 1075 (D. N. M. Aug. 6, 2007).  Here, the operative pleading appears to be American's Third-Party Complaint, wherein American asserts its third-party claims against Williams.  *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1171 (10th Cir. 2011) (looking to the third-party plaintiff's complaint in determining whether the amount in controversy has been satisfied).  While the Third-Party Complaint does not precisely identify what amount American seeks to recover from Williams, it does assert that it "is entitled to payment from Ms. Williams for all amounts that [it] has paid, and may be obligated to pay in the future, to [Myers] with respect to the Claim."  (ECF No. 33 at 17.)  As discussed, before Myers filed her complaint, American had already paid her $145,472.28—an amount well above the $75,000 threshold—pursuant to the insurance policy.  (*Id.* at 6.)  Thus, the Court is satisfied that it has subject matter jurisdiction over this lawsuit, even though American seeks to recover only $63,000 in its

8

Motion.  *See id.* (noting that "allegations in the complaint need not be specific or

technical in nature" to satisfy the amount in controversy requirement).

The Court likewise has personal jurisdiction[3] over Williams.  As mentioned, she

and Empower Realty Team, LLC, are both Colorado citizens for jurisdictional purposes.

And venue lies in this District, as the events alleged to have occurred in this case took

place within the District of Colorado.

**C.     American's Theories For Relief**

American contends that Williams is liable for the $63,000 it paid Myers pursuant

to their settlement agreement.  (ECF No. 61 at 6–7.)  To get there, it relies on equitable

subrogation and equitable contribution[4] theories.  (ECF No. 61 at 11.)  The Court

concludes that the alleged facts, deemed as true, support American's equitable

subrogation claim.

"Subrogation is defined as 'the substitution of another person in the place of a

creditor, so that the person in whose favor it is exercised succeeds to the rights of the

---

[3] While the Tenth Circuit has held that a district court does not have personal jurisdiction over a defendant if the defendant is not served, *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983), the Court, consistent with Judge Dominguez Braswell's conclusion (ECF No. 48), finds that American did properly effect service on Williams.

[4] It is doubtful that American could prevail under its equitable contribution theory.  "In the insurance context, the right to [equitable] contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others."  *Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co. of Kansas*, 158 F. Supp. 1183, 1201 (quoting *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 77 Cal.Rptr.2d 296, 303–04 (1998) (citations omitted); *D.R. Horton, Inc.-Denver v. Travelers Indem. Co. of America*, 860 F. Supp. 2d 1246, 1255 (recognizing that subrogation claims are different from contribution claims, the latter of which "arises between co-insurers only").  Here, American does not allege that Williams is a co-insurer.

creditor in relation to the debt.'" *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90

P.3d 814, 833 (Colo. 2004) (quoting *Behlen Mfg. Co. v. First Nat'l Bank of Englewood*,

28 Colo. App. 300, 472 P.2d 703, 707 (1970)).  "Although subrogation can occur by

contract, equitable subrogation is an equitable principle that allows 'a party secondarily

liable who has paid the debt of the party who is primarily liable [to] institute a recovery

action in order to be made whole.'" *Id.* (quoting *Mid–Century Ins. Co. v. Travelers

Indem. Co.*, 982 P.2d 310, 315 (Colo.1999)).  The Colorado Supreme Court has

outlined five factors courts should consider when determining whether equitable

subrogation applies:

> (1) the subrogee made the payment to protect his or her own
> interest; (2) the subrogee did not act as a volunteer; (3) the
> subrogee was not primarily liable for the debt paid; (4) the
> subrogee paid off the entire encumbrance; and (5)
> subrogation would not work any injustice to the rights of the
> junior lienholder.

*Hicks v. Londre*, 125 P.3d 452, 456 (Colo.2005).

"In the insurance context, courts generally apply the doctrine of equitable

subrogation to allow an insurer, who has made payment to its insured for a loss caused

by a third-party, to seek recovery from the third-party for such payment."  *Cotter Corp.,*

90 P.3d at 833.  "This prevents the insured from being unjustly enriched by recovering

from the insurer as well as the third-party, and prevents the third-party from escaping its

liability for the loss."  *Id.*

Taking the facts pled in American's Third-Party Complaint as true, the Court finds

that American has shown that it is entitled to relief under its equitable subrogation

theory.  American alleges that it paid the debt of Williams, who is primarily liable to

Myers.  (ECF No. 33 at 18.)  Specifically, American argues that it has paid in total over

10

$200,000 to Myers pursuant to the house insurance policy and the settlement
agreement, even though Williams "is responsible, at least in part, for the vandalism that
occurred at the Property" because she failed to take the steps necessary to prevent the
vandalism (such as by failing to evict the tenant, repossess the tenant's keys, and
change the locks).  (*Id.* at 17.)  American appears[5] to contend that, as a result of this
nonfeasance, it was forced to pay Myers more than its fair share and that Williams has
therefore escaped liability thus far.  (*Id.*)  In the Court's view, these factual allegations
satisfy most, if not all, of the applicable equitable subrogation factors and support entry
of default judgment.

### D.    Damages

Having determined that default judgment should be entered, the Court must next
determine the amount of American's recovery.  *See* 10A Charles Alan Wright et al.,
Federal Practice & Procedure § 2688 (4th ed., Sept. 2016 update); *see also Herzfeld v.
Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984) ("A final default judgment cannot be
entered against a party until the amount of damages has been ascertained.").  Actual
proof must support any default judgment for money damages.  *See Klapprott v. United
States*, 335 U.S. 601, 611–12 (1949).  In some situations, that proof is provided in a
hearing; however, the Court may enter default judgment without a hearing if the amount
claimed is "a liquidated sum or one capable of mathematical calculation."  *Hunt v. Inter-
Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

---

[5] The Court notes that it must somewhat infer the specifics of American's argument,
since American does not clearly set forth the legal standard for its third-party claims in
its Third-Party Complaint or Motion for Default Judgment.

American contends that it is entitled to recover $63,000, plus statutory interest of eight percent *per annum* beginning on the date judgment enters, an amount for which Williams and Empower Realty Team, LLC, would be jointly and severally liable.  (ECF No. 61 at 13.)  In support, American attaches its settlement agreement with Myers, which indicates that these parties settled for $63,000.  (*Id.* at 52.)  The Court concludes that this evidence is sufficient to support an entry of default judgment, and therefore enters default judgment totaling $63,000, plus statutory interest as determined by 28 U.S.C. § 1961.

### E.    Attorneys' Fees and Costs

Lastly, American asks for attorneys' fees and costs associated with collection. (*Id.* at 13.)

But American does not request attorney's fees in a particular amount, nor does it provide documentation of its attorney's fee rate or time spent on this matter, and as a result, the Court has no idea of what its fee amount is in this case.  American is therefore directed to supply full documentation of its attorney's hours expended on this matter, its attorney's hourly rate, and the reasonableness of both.

With respect to American's request for an award of costs, Federal Rule of Civil Procedure 54(d) provides that costs, other than attorney's fees, should be awarded to a prevailing party, and 28 U.S.C. § 1920 provides that such an award is to be made upon the filing of a bill of costs.  As American has not filed a bill of costs (which is appropriate, given that judgment has not yet entered), nor has it requested a particular sum it is seeking in costs, it must provide documentation of the costs reasonably expended in this case for the Court to properly consider an award of the same.

Thus, the Court defers ruling on American's request for attorneys' fees and costs but will permit it time to file the appropriate documentation of both amounts as outlined above.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. American's Motion for Default Judgment (ECF Nos. 61, 63) is GRANTED. The Court rules that American has established liability in its favor on the equitable subrogation claim pled in its Third-Party Complaint;

2. The Clerk of Court is DIRECTED to enter Default Judgment against Third-Party Defendants in the amount of $63,000, including post-judgment interest as permitted by statute;

3. American shall submit all documentation as required by rule and applicable case law of the reasonable amount of attorney's fees and costs expended by it in this matter by no later than **August 20, 2024**; and

4. The Clerk shall terminate this action.

Dated this 30th day of July, 2024.

BY THE COURT:

William J. Martinez
Senior United States District Judge

13